IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WESTFIELD SUPERIOR INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 25-cv-2432 |
| | ) | |
| CHICAGO CUSTOM HOME BUILDERS, | ) | |
| INC., ANTHONY ZITELLA, AND LISA | ) | |
| ZITELLA, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Westfield Superior Insurance Co., ("Westfield"), by its attorneys, Esp Kreuzer Cores LLP, for its Complaint for Declaratory Judgment against Defendants Chicago Custom Home Builders, Inc., Anthony Zitella, and Lisa Zitella, states:

## I. THE PARTIES

1.     Westfield is an Ohio corporation, with its principal place of business in Westfield Center, Ohio. At all times relevant herein, Westfield was authorized to issue policies of insurance in the State of Illinois and issued a certain commercial general liability policy to its named insured, Chicago Custom Home Builders as detailed herein.

2.     As of September 13, 2024, Chicago Custom Home Builders is a dissolved Illinois corporation, that formed on April 18, 2007; has a business address of 5128 N Elston Avenue, Suite 206, Chicago; and has a registered agent, Neil Regan, located at 5128 N Elston Ave, Suite 206, Chicago.

3.     Anthony Zitella and Lisa Zitella are individuals who resides at 3758 N. Wayne Avenue, Chicago, that filed an underlying pleading titled "Application to Confirm Arbitration Award, against Chicago Custom Home Builders, case no. 2023CH01949 (Cook County, IL).

## II.  JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, Westfield is a citizen of the State of Ohio. Upon information and belief, Chicago Custom Home Builders, Anthony Zitella, and Lisa Zitella are all citizens of the State of Illinois or incorporated in Illinois with their principal places of business in Illinois.

5.      Venue of this action in the Eastern Division of the Northern District of Illinois is proper pursuant to 28 U.S.C. §1391(a), (b), and (c), because Westfield issued the liability policy to Chicago Custom Home Builders at 5128 N. Elston Avenue, Suite 206, Chicago; the underlying incidents took place within Cook County; and the underlying lawsuit is pending in Cook County, Illinois.

## III. THE UNDERLYING LAWSUIT

6.      On February 28, 2023, Anthony Zitella and Lisa Zitella filed a pleading titled "Application to Confirm Arbitration Award," against Chicago Custom Home Builders, case no. 2023CH01949 (Cook County, IL), (the "Chancery complaint"). Westfield files the Chancery complaint (Dkt. 1-2).

7.      The Chancery complaint alleges that during July of 2016, the Zitellas hired CCHB to renovate their home located at 3758 N. Wayne Avenue, Chicago. (Dkt. 1-2 at 2¶5, sub.ex. 1).

8.      The Chancery complaint alleges that on July 31, 2020, the Zitellas filed a demand for arbitration with the American Arbitration Association, ("AAA"), against Chicago Custom Home Builders. (Dkt. 1-2 at 2¶8).

9.      The Chancery complaint does not attach the demand for arbitration as an exhibit.

10.     The Chancery complaint alleges that on February 3, 2023, AAA entered an arbitration award in the amount of $826,892.37 ($483,657.60 of damages and $343,244.77 in attorney's fees and costs) in favor of the Zitellas and against Chicago Custom Home Builders. (Dkt. 1-2 at 2¶10, sub.ex. 2).

11.     The final award states that arbitration hearings took place on September 28, September 29, and October 11 of 2022. (Dkt. 1-2 at 2¶10, sub.ex. 2).

12.     The final award states that AAA entered an interim award on December 11, 2022. (Dkt. 1-2 at 2¶10, sub.ex. 2).

13.     The final award states that it is a full settlement of all claims to the Arbitration. (Dkt. 1-2 at 2¶10, sub.ex. 2).

14.     The final award states that the Zitellas occupied the residence on November 7, 2017. (Dkt. 1-2 at 2¶10, sub.ex. 2).

15.     The final award states that prior to July 31, 2020, the Zitellas made warranty claims. (Dkt. 1-2 at 2¶10, sub.ex. 2).

16.     The final award states that Chicago Custom Home Builders made a number of attempts to cure. (Dkt. 1-2 at 2¶10, sub.ex. 2).

17.     The final award states that on July 31, 2020, the Zitellas filed their Demand for Arbitration. (Dkt. 1-2 at 2¶10, sub.ex. 2).

18.     The final award states that the Demand for Arbitration sounded in breach of contract; breach of warranty; violation of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2; and negligence. (Dkt. 1-2 at 2¶10, sub.ex. 2).

19.     The final award has language stating that the Zitellas failed to meet their burden of establishing the Consumer Fraud Act claim.  (Dkt. 1-2 at 2¶10, sub.ex. 2).

20.     On June 6, 2023, the Zitellas filed a motion for default and judgment.  Westfield files a copy of the motion as (Dkt. 1-3).

21.     The motion states that Chicago Custom Home Builders, by and through its attorney Marc S. Mayer, accepted service of the application. (Dkt. 1-3).

22.     The motion states that the e-mail acceptance of service is attached as Exhibit B. (Dkt. 1-3, sub.ex. B).

23.     Mayer's e-mail, dated February 28, 2023, states that Mayer is still waiting for Pekin to inform him what, if anything from the award that Pekin was going to pay.  (Dkt. 1-3, sub.ex. B).

24.     On June 29, 2023, the Chancery Court entered an order granting the motion for default judgment.  Westfield files a copy of the order as (Dkt. 1-4).

25.     On November 2, 2023, the Chancery Court entered an order transferring the matter to the Law Division for further assignment to the post judgment calendar 5. Westfield files a copy of the order as (Dkt. 1-5).

26.     On January 8, 2024, the court continued the matter to February 20, 2024 for citation return date. Westfield files a copy of the order as (Dkt. 1-6).

27.     On February 7, 2024, the Zitellas served upon Chicago Custom Home Builders, care of Natalie Regan, a second citation to discover assets.  Westfield files a copy of the order as (Dkt. 1-7).

28.     On February 20, 2024, the court entered an order placing the matter on the bankruptcy stay calendar. Westfield files a copy of the order as (Dkt. 1-8).

IV. NOTICE OF THE UNDERLYING CLAIM OR LAWSUIT

29.     On January 22, 2025, Westfield first received notice of a claim against Chicago

Custom Home Builders involving the address 3758 N. Wayne, Chicago.

30.     Westfield received notice of the claim involving 3758 N. Wayne, Chicago on January 22, 2025, from David Leibowitz, as chapter 7 bankruptcy trustee for Chicago Custom Home Builders in the case *In re Chicago Custom Home Builders, Inc.* United States Bankruptcy Court, Northern District of Illinois, case no. 24-02286. Westfield files as (Dkt. 1-9) a copy of the one (1) page letter that provided notice to Westfield.

31.     The letter did not provide information on the name of any third party claimant. (Dkt. 1-9).

32.     There is no language in the letter identifying the AAA Arbitration suit or the Chancery complaint.

33.     On March 25, 2025, Westfield, through its retained attorney, performed an internet search to discover the legal names of the owners of 3758 N. Wayne, and then a Cook County docket search.

34.     On March 25, 2025, upon performing the docket search, through retained counsel, Westfield discovered for the first time that the Zitellas filed the Chancery complaint.

35.     On March 25, 2025, upon performing the docket search, through retained counsel, Westfield discovered for the first time that the Zitellas filed an AAA Arbitration suit against Chicago Custom Home Builders.

36.     On March 25, 2025, Westfield, through its retained attorney, upon performing an internet search and a Cook County docket search, first obtained a copy of the Chancery Complaint.

37.     No person or organization has ever provided a copy of the AAA arbitration demand to Westfield.

38.     No person or organization has ever provided Westfield with a copy of any pleading, demand, or notice in the Arbitration suit.

## V. THE LIABILTIY POLICIES

39.     Pekin Insurance Company issued one or more commercial insurance policies to Chicago Custom Home Builders, effective sometime between May 31, 2016 and May 31, 2021. Westfield does not have access to any commercial general liability policy that Pekin Insurance Company issued to Chicago Custom Home Builders.

40.     Westfield issued a commercial package policy to Chicago Custom Home Builders, policy CWP 133032C, effective March 1, 2023 to March 1, 2024. Westfield files a copy of the policy as (Dkt. 1-10).  The policy was cancelled on August 7, 2023. (Dkt. 1-10 at 1).

41.     The common policy declarations identify the business of the named insured as "Contractors;" and the entity of the named insured as "Corporation." (Dkt. 1-10).

42.     The policy includes a commercial general liability coverage part. The CGL has limits of $1 million each occurrence and $2 million in the aggregate. (Dkt. 1-10 at 22).

43.     The top of the first page of the Commercial General Liability Coverage Form states as follows:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we," "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.  * * *

(Dkt. 1-10 at 85).

44.     Section II, titled "Who Is An Insured," reads in part:

> 1. If you are designated in the Declarations as:
>> d.   An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive

6

officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

(Dkt. 1-10 at 93).

45. The Insuring Agreement of "Coverage A – Bodily Injury and Property Damage Liability" of the Commercial General Liability Form provides as follows:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' of 'property damage' to which this insurance does not apply. ***

   b. This insurance applies to "bodily injury" and "property damage" only if: * * * (3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      **(2)** Receives a written or verbal demand or claim for

damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\*　　　\*　　　\*

2.　Exclusions

This insurance does not apply to:

a.　Expected Or Intended Injury

'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property.

b.　Contractual Liability

'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. \* \* \*

j.　'Property Damage' to:

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard." \* \* \*

k.　Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

l.　Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product;"
(2) "Your work;" or
(3) "Impaired property;"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. Personal And Advertising Injury
    'Bodily injury' arising out of 'personal and advertising injury'. * * *

(Dkt. 1-10 at 85-91).

46.    The Insuring Agreement of "Coverage B – Personal And Advertising Injury" of the Commercial General Liability Form provides as follows:

1.  Insuring Agreement

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will

have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply. * * *

2.  Exclusions
    This insurance does not apply to:
    a.  Knowing Violation Of Rights Of Another
        'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'.
    b.  Material Published With Knowledge Of Falsity
        'Personal and advertising injury' arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.
    c.  Material Published Prior To Policy Period
        'Personal and advertising injury' arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.
    d.  Criminal Acts
        'Personal and advertising injury' arising out of a criminal act committed by or at the direction of the insured.
    e.  Contractual Liability
        'Personal and advertising injury' for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.
    f.  Breach Of Contract
        'Personal and advertising injury' arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement'. * * *
    i.  Infringement Of Copyright, Patent, Trademark Or Trade Secret
        'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your 'advertisement'.
        However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan. * * *

(Dkt. 1-10 at 90-91).

47.    Endorsement CG 21 67 12 04 of the policy, titled "Fungi or Bacteria Exclusion," states in part that the insurance under Coverage A does not apply to:

    a.  "Bodily injury" or "property damage" which would not have

10

occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

(Dkt. 1-10 at 126).

48.     Endorsement CG 21 67 12 04 of the policy, titled "Fungi or Bacteria Exclusion," states in part that the insurance under Coverage B does not apply to:

a. "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

(Dkt. 1-10 at 126).

49.     The CGL is subject to a Contractors – Professional Liability Exclusion that reads in part:

EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I - Coverage B – Personal And Advertising Injury Liability:

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph 3. below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

(Dkt. 1-10 at 130).

50. Section V of the Commercial General Liability Coverage Form, titled "Definitions," reads in part:

1.      "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

b.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

c.  Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement. *      *      *

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

*      *      *

6.      "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

*      *      *

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.  False arrest, detention or imprisonment;

b.  Malicious prosecution;

c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.  The use of another's advertising idea in your "advertisement"; or

g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement". *      *      *

16. "Products-completed operations hazard":

a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising

13

out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

14

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. * * *

21. "Your product":

    a. Means:

        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

           (a) You;
           (b) Others trading under your name; or
           (c) A person or organization whose business or assets you have acquired; and

        (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

        (2) The providing of or failure to provide warnings or instructions.

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

    a. Means:

        (1) Work or operations performed by you or on your behalf; and

        (2) Materials, parts or equipment furnished in

connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

(2) The providing of or failure to provide warnings or instructions.

(Dkt. 1-10 at 97-100).

51.     Endorsement CG 26 59 06 00, titled "Illinois Changes – Contractors – Home Repair and Remodeling," reads in part:

This endorsement modifies insurance provided under the following:

COMEMRCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| Limit of Liability for "property damage" arising out of "improper home repair and remodeling" - $10,000 per "occurrence" unless otherwise indicated below:<br><br>$10,000 Per "occurrence<br>$500 Deductible<br>$* * *      Premium |

**A.** The following is added to **Section I - Coverages**:
COVERAGE – IMPROPER HOME REPAIR AND REMODELING
**1.** Insuring Agreement
**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of 'improper home repair and remodeling' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking damages to which this insurance does not apply. We may at our discretion, investigate any incident and settle any claim or 'suit' that may result. But:
**(1)** The most we will pay for "improper home repair and remodeling" at any one "residence" is $10,000, in excess of a $500 deductible, unless other amounts are indicated in the Schedule of this endorsement; and
**(2)** Our right and duty to defend end when we have used up that amount in the payment of judgments or settlements for "improper home repair and remodeling".

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to "improper home repair and remodeling" only if:

**(1)** The "improper home repair and remodeling" takes place at a "residence" in the State of Illinois; and

**(2)** The "improper home repair and remodeling" was performed by the insured during the policy period.

**(3)** The insured issued a written contract or work order prior to initiating the "home repair and remodeling". However, this only applies if the estimated cost of the "home repair and remodeling" was over $1000.

**c.** All "improper home repair and remodeling" performed by you at any one "residence" will be deemed to have been performed at the time any "home repair and remodeling" that is determined to be not in conformance with applicable state, county or municipal building codes at that "residence" was first performed.

2. Exclusions

This insurance does not apply to:

**d. Expected Or Intended Injury**

"Improper home repair and remodeling" knowingly performed by the insured.

e. **Contractual Liability**

"Improper home repair and remodeling" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

\* \* \*

**e. Ongoing Work**

"Home repair and remodeling" that has not been completed. "Home repair and remodeling" will be deemed to be completed at the earliest of the following times:

(1) When all of your work at the "residence" has been completed; or

(2) When that part of your work at a "residence" has been put to its intended use by any person or organization other

17

than another contractor or subcontractor working at the same "residence". Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**f. Subcontracted Work**

"Improper home repair and remodeling" performed by a subcontractor.

\* \* \*

**B.** All references to **Supplementary Payments - Coverages A and B** are amended to **Supplementary Payments - Coverages A, B and Home Repair And Remodeling Liability.**

**C.** The following is added to **Section V - Definitions:**

"Home repair and remodeling" means the fixing, replacing, altering, converting, modernizing, improving or making of an addition to any real property primarily designed or used as a residence other than maintenance, service or repair under $500. "Home repair and remodeling" includes the construction, installation, replacement, or improvement of driveways, swimming pools, porches, kitchens, bathrooms, basements, chimney, chimney liners, garages, fences, fallout shelters, central air conditioning, central heating, boilers, furnaces, electrical wiring, sewers, plumbing fixtures, storm doors, windows, roofs, awnings, and other improvements to structures within the residence or upon the land adjacent to the residence.

However, "home repair and remodeling" does not include the sale, installation, cleaning, or repair of carpets; the repair, installation, replacement or connection of any home appliance including but not limited to disposals, refrigerators, ranges, garage door openers, televisions or television antennas, washing machines, telephones, hot water heaters, satellite dishes, or other appliances when the person replacing, installing, repairing or connecting the home appliance are employees or agents of the merchant that sold the home appliance or sold new products of the same type; or landscaping.
"Improper home repair and remodeling" means "home repair and remodeling" that is not in conformance with applicable state, county or municipal codes that were in effect at the time of the "home repair and remodeling".

"Residence" means a single-family home or dwelling or a multiple-family home or dwelling containing 6 or fewer apartments,

condominiums, town houses, or dwelling units, used or intended to be used by occupants as dwelling places.

(Dkt. 1-10 at 172-173).

52.     Condition 2 of Section IV of the Commercial General Liability Form of Westfield's policy reads in part:

Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons or witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    d.   No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(Dkt. 1-10 at 95).

    53.    Condition 4 of Section IV of the Westfield CGL reads in part:

    If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:

    f.   Primary insurance

    This insurance is primary except when Paragraph b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph c. below.

    g.  Excess Insurance

    (5) This insurance is excess over:
    (a) Any of the other insurance, whether primary, excess, contingent, or on any other basis:

    (i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work;"

    (ii)  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

    (iii)  That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv)   If the loss arises out of the maintenance or use of aircraft, "autos," or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury and Property Damage Liability.

(b)  Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or products and completed operations for which you have been added as an additional insured.

*       *       *

(4)       We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.       *       *       *

d.   Method Of Sharing

If all of the other insurance permits con-tribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its appliable limits of in-surance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of in-surance to the total applicable limits of insurance of all insurers.

(Dkt. 1-10 at 96).

54.     Endorsement CG 20 01 12 19 of the Westfield policy, titled "Primary and Noncontributory – Other Insurance Condition," contains two "conditions precedent" to full primary coverage on a concurrent basis with other subcontractors' liability insurance:

(1) The additional insured is a Named Insured under such other insurance; and

(2) You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

21

(Dkt. 1-10 at 109).

55.    The "Contractor's Professional and Pollution Legal Liability" endorsement limits the meaning of "professional services" to "value engineering and field changes to design." (Dkt. 1-10 at 151).

56.    The "Contractor's Professional and Pollution Legal Liability" endorsement states that value engineering means "an organized effort directed at analyzing designed building features, systems, equipment, and material selections for the purpose of achieving essential functions at the lowest life cycle cost consistent with required performance, quality, reliability, and safety." (Dkt. 1-10 at 170).

57.    The "Contractor's Professional and Pollution Legal Liability" endorsement states that field changes to design includes but is not limited to:

> when a contractor discovers a minor physical job situation that makes it imprudent or impossible to complete the task, from the existing contract documents, the contractor then adjusts the job task, using practical construction knowledge, which does not inhibit the quality of the project, and leads to a field solution. This definition does not include any design that is required to be done by a licensed architect or engineer, and it does not include design related to construction means, methods, or jobsite safety precautions.

(Dkt. 1-10 at 166).

58.    The insuring language of the "Contractor's Professional and Pollution Legal Liability" endorsement reads in part:

> a. We will pay those sums that you become legally obligated to pay because of a "claim" resulting from an act, error, or omission in "professional services", provided that:
> (1) A Limit of Insurance is shown as included on the SCHEDULE under **Professional Legal Liability Insurance**;
> (2) The "claim" arises out of "professional services" rendered on or after the "retroactive date" and prior to the expiration of the

endorsement period;

(3) The "claim" is not covered under **Contractor's Pollution Legal Liability Insurance**; and

(4) The "claim" is first made against the insured during the endorsement period and reported to us, in writing, during the endorsement period or, where applicable, the "automatic extended reporting period" or the "optional extended reporting period".

b. We have the right and duty to defend you against any "claim" seeking "professional loss" to which **Professional Legal Liability Insurance** applies, including the right to select counsel, even if any of the allegations are groundless, false or fraudulent. However, we have no duty to defend you against any "claim" to which **Professional Legal Liability Insurance** does not apply.

(Dkt. 1-10 at 153).

59.     Section C., titled "Who Is An Insured," of the "Contractor's Professional and Pollution Legal Liability" endorsement reads in part:

1.   Insured means each of the following:

a.   Any "named insured" and any current or former director, partner, member, executive officer, employee or "leased worker" of the "named insured", but solely while acting within the course and scope of his/her duties as such.

(Dkt. 1-10 at 160-161).

60.     The "Contractor's Professional and Pollution Legal Liability" endorsement states in part that the Professional Legal Liability Insurance does not apply to:

**c. Fines, Penalties, Punitive and Multiplied Damages**

Any actual or alleged "claim" or liability for, or amount consisting of, a fine, penalty, punitive damages, exemplary damages or multiplied damages.

**d. Equitable and Other Types of Relief**

Any actual or alleged "claim" or liability for equitable relief, restitution or the return of money for work or services.

(Dkt. 1-10 at 154).

61. The "Contractor's Professional and Pollution Legal Liability" endorsement further states in part that the Professional Legal Liability Insurance does not apply to:

**c. Contractual Liability**
Arising from the insured's:
(**1**) Assumption of liability in a contract or agreement; or
(**2**) Breach of contract or agreement. * * *

**f. Express Warranty and Guaranty**

Arising from any express warranty or guaranty. This exclusion does not apply to any warranty or guarantee by the insured that the insured's "professional services" are in conformity with the standard of care that would be applicable in the absence of such express warranty or guarantee. * * *

**j. Intentional and Dishonest Acts**

Arising from any
(**1**) Intentional disregard of or noncompliance with, any statute, regulation, ordinance, law or order by or at the direction of the insured or its agent; or
(**2**) Actual or alleged fraudulent, dishonest or malicious conduct by the insured. This exclusion does not apply to the insured that did not allegedly commit or allegedly participate in committing any of the forgoing described above. * * *

**m. Mold Matter**

Arising out of the existence of, exposure to, required removal or abatement of "mold matter", in any form including but not limited to any such cause or condition involving the presence, discharge or infiltration of moisture, vapor, water or any other liquid, or any damage related thereto. For purposes of this exclusion, "mold matter" means mold, mildew or any type or form of fungus, including myotoxins, spores or by-products produced or released by fungi. * * *

**p. Personal Injury**

Arising from the false arrest, humiliation, harassment, detention, imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution, abuse of process, libel, slander, harassment, or other defamatory or disparaging material,

or a publication or an utterance in violation of an individual's right of privacy. * * *

**r. Professional Liability**

Arising out of the rendering of or failure to render professional services by the insured, unless there is a limit of insurance shown on the SCHEDULE for **Professional Legal Liability Insurance**.

(Dkt. 1-10 at 157-159).

62.     Condition 4, titled "Duties in the Event of an "Occurrence", "Pollution Condition", "Professional Loss", "Loss" or "Claim," of the "Contractor's Professional and Pollution Legal Liability" endorsement reads in part:

**a.** No insured will, except at its own cost, voluntarily make a payment, assume any obligation, admit liability, or incur any expense without our prior written consent.

**b.** The insured must see to it that we are notified as soon as practicable of any "occurrence", "pollution condition", "loss" or act, error or omission in "professional services" which may result in a "claim". To the extent possible, notice should include:
     **(1)** How, when and where the "occurrence", "pollution condition", "loss" or act, error or omission in "professional services" took place;
     **(2)** The names and addresses of any person involved and/or having knowledge of the "occurrence", "pollution condition", "loss" or act, error or omission in "professional services";
     **(3)** The "contracting services" that may have caused such "pollution condition"; and
     **(4)** The nature of any resulting harm, injury or damage.
**c.** If a "claim" is made or brought against an insured, the insured must:
     **(1)** Immediately record the specifics of the "claim" and the date it was received;
     **(2)** Notify us as soon as practicable;
     **(3)** Provide written notice of the "claim" as soon as practicable;
     **(4)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with a "claim";
     **(5)** Authorize us to obtain records and other information;
     **(6)** Cooperate with us in the investigation, settlement or

defense of the "claim"; and

**(7)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "loss" to which the Insurance under this endorsement applies;

**(8)** With respect to **Professional Legal Liability Insurance**, the insured must also provide the date and details of all actual and alleged acts, errors or omissions in "professional services" which took place, along with the specific nature, date and extent of any injury or damage which has been sustained, copies of any contracts that have been entered into by any insured that are related to the "professional services" and details explaining how the "insured" first became aware of the circumstance.

(Dkt. 1-10 at 163-164).

## VI. COVERAGE ALLEGATIONS

63.     Westfield owes no duty to defend and/or indemnify Chicago Custom Home Builders under the Westfield commercial general liability coverage part for one or more of the following reasons:

a.   Chicago Custom Home Builders' delay in excess of seven (7) years in providing notice of an occurrence, an offense, or a loss that may result in a claim constitutes a failure to meet a condition precedent to coverage against the Zitellas' suit under the Westfield commercial general liability policy;

b.   Chicago Custom Home Builders' delay in excess of four and a half (4 and 1/2) years in providing notice to Westfield of the AAA Demand for Arbitration was unreasonable as a matter of law and constitutes a failure to meet a condition precedent to coverage against the Zitellas' suit under the Westfield commercial general liability policy;

c.   Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, as of the time that Westfield

issued the first commercial package policy, i.e., Chicago Custom Home Builders was already aware of the Zitellas' claimed loss, such that the fortuity or known loss doctrines apply;

d. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, to the extent that any alleged loss is the result of professional errors or omissions, the damages do not come within the Inuring Agreement of Coverage A or B of the Commercial General Liability Coverage Part;

e. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, to the extent that any damages constitute solely economic loss, the damages do not come within the Inuring Agreement of Coverage A or B of the Commercial General Liability Coverage Part;

f. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, attorneys' fees are not damages because of "property damage," and therefore do not fall within the Insuring Agreement of Coverage A or B of the Commercial General Liability Coverage Part;

g. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, the common policy declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, would apply to limit the scope of coverage available to Chicago Custom Home Builders against the Zitella suit;

h. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, in light of the common policy declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, the term "occurrence" does not contemplate professional errors in accordance with the common meaning of the phrase;

i. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, in light of the common policy declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, the breach of a professional contractual duty does not constitute an "occurrence," as a commercial general liability policy uses that term. In other words, a business's failure to perform its services in the manner that it had promised is an "error or omission" but not by any stretch an "accident;"

j. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, in light of the common policy declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, the term "occurrence" does not contemplate poor business performance or breach of contract;

k. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, in light of the common policy declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, the failure to meet a standard of care

under a contractually assumed duty is not an "accident;" an alleged breach of duty to adequately perform various contractually undertaken construction supervision and inspection services during the course of ongoing operations constitutes an insured's simple failure to do its job as promised, a risk that is involved in every business relationship, but which is not an accident covered under a general liability insurance policy;

l. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, in light of the common policy declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, concealment of defective construction or refusal to correct defective construction work, during the course of ongoing operations, is intentional conduct rather than an accident;

m. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, exclusion a. reinforces the proposition that that the insurance does not apply to bodily injury or property damages expected or intended from the standpoint of the insured;

n. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, in light of the common policy declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, subject to limited exceptions, exclusion b. reinforces the proposition that the insurance generally does not apply to contractual liability for bodily injury or property damages;

o. Even if hypothetically Chicago Custom Home Builders could establish that it

complied with all of the conditions for coverage, in light of the common policy declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, exclusion j(5) reinforces the proposition that the insurance does not apply to property damage to that particular part of real property on which Chicago Custom Home Builders or its contractors or subcontractors are performing operations;

p. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, in light of the common policy declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, exclusion j(6) reinforces the proposition that the insurance does not apply to property damage to that particular part of any property that must be restored, repaired or replaced because Chicago Custom Home Builders' work was incorrectly performed on it, when the damage happened during the scope of Chicago Custom Home Builders' ongoing operations;

q. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, in light of the common policy declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, exclusion (k) reinforces the proposition that the insurance does not apply to property damage to Chicago Custom Home Builders' product;

r. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, in light of the common policy

declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, exclusion (l) reinforces the proposition that the insurance does not apply to damage to Chicago Custom Home Builders' work;

s. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, in light of the common policy declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, exclusion (m) reinforces the proposition that the insurance does not apply to damage to impaired property or property not physically injured;

t. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, in light of the common policy declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, exclusion (n) reinforces the proposition that the insurance does not apply to recall of products, work, or impaired property;

u. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, in light of the common policy declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, the subcontractor exception to the "Your Work" exclusion for products-completed operations risks only applies where the named insured did not retain or choose that subcontractor, otherwise, the insurance contract would involve a "moral hazard" problem;

v. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, in light of the common policy declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, the Zitella suit does not set forth allegations against Chicago Custom Home Builders constituting any of the offenses set forth in the definition of "personal and advertising injury;"

w. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, exclusion a. of the home repair and remodeling endorsement, reinforces the proposition that the insurance does not apply for "improper home repair and remodeling knowingly performed by the insured;"

x. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, exclusion b. of the home repair and remodeling endorsement, reinforces the proposition that the insurance does not apply to contractual liability for improper home repair and remodeling, including but not limited to the costs of re-design and re-construction to meet the City's approval in connection with code compliance;

y. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, exclusion e. of the home repair and remodeling endorsement, reinforces the proposition that the insurance does not apply for work that was not completed;

z. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, exclusion f. of the home repair

and remodeling endorsement, for "subcontracted work," reinforces the proposition that the insurance does not apply to subcontracted work;

aa. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, the allegations of Chicago Custom Home Builders' liability are not within the risk that the "Contractor's Professional and Pollution Legal Liability" endorsement was intended to insure against, where Chicago Custom Home Builders did not contract to supply "value engineering and field changes to design;"

bb. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage and the underlying complaint or any of the amended superseded pleadings alleged a claim resulting from an act, error, or omission in "value engineering and field changes to design" services, exclusion c. on page 4 of the endorsement reinforces the proposition that the professional legal liability insurance does not apply to fines, penalties, punitive and multiplied damages;

cc. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage and the underlying complaint or any of the amended superseded pleadings alleged a claim resulting from an act, error, or omission in "value engineering and field changes to design" services, the exclusion d. on page 4 of the endorsement reinforces the proposition that the professional legal liability insurance does not apply to equitable and other types of relief;

dd. Even if hypothetically Chicago Custom Home Builders could establish that it

complied with all of the conditions for coverage and that the underlying complaint or any of the amended superseded pleadings alleged a claim resulting from an act, error, or omission in "value engineering and field changes to design" services, exclusion c. on page 7 of the endorsement reinforces the proposition that the professional legal liability insurance generally does not apply to contractual liability, i.e., the insured's (1) "[a]ssumption of liability in a contract or agreement; or (2) [b]reach of contractor or agreement;"

ee. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, and the underlying complaint or any of the amended superseded pleadings alleged a claim resulting from an act, error, or omission in "value engineering and field changes to design" services, exclusion f. on page 8 of the endorsement reinforces the proposition that the professional legal liability insurance does not apply to "express warranty and guaranty;"

ff. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage and the underlying complaint or any of the amended superseded pleadings alleged a claim resulting from an act, error, or omission in "value engineering and field changes to design" services, exclusion j. on page 8 of the endorsement reinforces the proposition that the professional legal liability insurance does not apply to "intentional and dishonest acts;"

gg. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage and the underlying complaint or

any of the amended superseded pleadings alleged a claim resulting from an act, error, or omission in "value engineering and field changes to design" services, exclusion m. on page 8 of the endorsement reinforces the proposition that the professional legal liability insurance does not apply to "mold matter;"

hh. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, and that the underlying complaint or any of the amended superseded pleadings alleged a claim resulting from an act, error, or omission in "value engineering and field changes to design" services, exclusion p. on page 9 of the endorsement reinforces the proposition that the professional legal liability insurance does not apply to "personal injury;"

ii. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, to the extent that the underlying complaint or any of the amended superseded pleadings alleges a claim resulting from an act, error, or omission in "value engineering and field changes to design" services, exclusion r on page 9 of the endorsement reinforces the proposition that the professional legal liability insurance does not apply to "professional liability," arising out of the rendering of or failure to render professional services by the insured, unless there is a limit of insurance shown on the schedule for professional legal liability insurance;

jj. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, in light of the common policy declarations, insuring agreements, business risk exclusions, and the professional liability exclusion, construed as a whole, the Westfield commercial general

liability policy would be excess over any additional insured coverage that exists for Chicago Custom Home Builders;

kk. Even if hypothetically Chicago Custom Home Builders could establish that it complied with all of the conditions for coverage, endorsement CG 21 67 12 04 reinforces the proposition that the insurance does not apply to fungi or bacteria;

ll. There may be other bases for denying coverage and Westfield reserves the right to plead them in the future.

64. An actual and justiciable controversy exists between the parties hereto concerning coverage, if any, provided by Westfield.

WHEREFORE, Plaintiff, Westfield Superior Insurance Company, prays that this Honorable Court enter a judgment declaring: 1) that Westfield Superior Insurance Company owes no coverage obligation to Chicago Custom Home Builders against the Zitella suit, including the AAA Arbitration Suit and case no. 2023CH01949 (Cook County, Illinois) under the commercial general liability coverage part of the Westfield commercial package policy; 2) awarding Westfield Superior Insurance Company its costs incurred; and 3) providing such further relief as the Court deems just.

ESP KREUZER CORES LLP
400 S. County Farm Road
Suite 200
Wheaton, Illinois 60187
(630) 871-1002; ARDC #6274517; our file 1.10953K
jbarger@ekclawfirm.com; lmurphy@ekclawfirm.com

RESPECTFULLY SUBMITTED,

_Jeffrey S. Barger_

Jeffrey S. Barger