IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WESTFIELD SUPERIOR INSURANCE CO., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHICAGO CUSTOM HOME BUILDERS, ) <br> INC., ANTHONY ZITELLA, AND LISA ) <br> ZITELLA, ) <br> ) <br> Defendants. ) | Court No. 25-cv-2432 <br><br> Honorable Jeremy C. Daniel |

MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS

Plaintiff, Westfield Superior Insurance Company, ("Westfield"); pursuant to Federal Rule of Civil Procedure 55(b)(2), for its motion for default judgment against Defendants, states:

BACKGROUND

"Because '[u]pon default, the well-pled allegations of the complaint relating to liability are taken as true,' . . . the facts recited here are, unless otherwise noted, taken from [Westfield's] Complaint." First Mercury Insurance Co. v. Elite Exteriors, LLC, 20-cv-01905, 2021 WL 1706239, *1 (N.D.Ill. January 28, 2021)(Citing Wehrs v. Wells, 688 F.3d 886, 892 (7th Cir. 2012)). This is a declaratory judgment action in part concerning whether an insured by the name of Chicago Custom Home Builders, Inc., failed to comply with the notice provisions of consecutive commercial general liability policies that an insurer, Westfield, issued, where there is a delay in excess of seven (7) years in the insurer receiving notice of an occurrence, offense, or loss; and there is a delay in excess of four and a half (4 and 1/2) years in the insurer receiving notice of an American Arbitration Association, ("AAA"), Demand for Arbitration.

THE UNDERLYING STATE LAWSUIT

On February 28, 2023, Anthony Zitella and Lisa Zitella filed a pleading titled

"Application to Confirm Arbitration Award," against Chicago Custom Home Builders, case no. 2023CH01949 (Cook County, IL). (Dkt. 21 at 2¶6; Dkt 1-2). The complaint alleges that during July of 2016, the Zitellas hired Chicago Custom Home Builders to renovate their home located at 3758 N. Wayne Avenue, Chicago. (Dkt. 21 at 2¶7; Dkt. 1-2 at 2¶5, sub.ex. 1). The complaint alleges that on July 31, 2020, the Zitellas filed a demand for arbitration with the AAA against Chicago Custom Home Builders. (Dkt. 21 at 2¶8; Dkt. 1-2 at 2¶8). The complaint does not attach the demand for arbitration as an exhibit. (Dkt. 21 at 2¶9). The complaint alleges that on February 3, 2023, AAA entered an arbitration award in the amount of $826,892.37 ($483,657.60 of damages and $343,244.77 in attorney's fees and costs) in favor of the Zitellas and against Chicago Custom Home Builders. (Dkt. 21 at 3¶10; Dkt. 1-2 at 2¶10, sub.ex. 2).

On June 6, 2023, the Zitellas filed a motion for default and judgment. (Dkt. 21 at 4¶20; Dkt. 1-3). The motion states that Chicago Custom Home Builders, by and through its attorney Marc S. Mayer, accepted service of the application. (Dkt. 21 at 4¶21; Dkt. 1-3 at 1, 37). The motion states that the e-mail acceptance is attached as Exhibit B. (Dkt. 21 at 4¶22; Dkt. 1-3, sub.ex. B). Mayer's e-mail, dated February 28, 2023, states that Mayer, of the law firm Mayer and Marsh, is still waiting for Pekin to inform him what, if anything from the award that Pekin was going to pay. (Dkt. 21 at 4¶23; Dkt. 1-3 at 1, 37, sub.ex. B). On June 29, 2023, the Court entered an order granting the motion for default judgment. (Dkt. 21 at 4¶24; Dkt. 1-4).

THE DECLARARTORY JUDGMENT LAWSUIT

On January 22, 2025, Westfield first received notice of a claim against Chicago Custom Home Builders involving the address 3758 N. Wayne, Chicago. (Dkt. 21 at 4¶29). Westfield received notice of the claim involving 3758 N. Wayne, Chicago on January 22, 2025, from David Leibowitz, as chapter 7 bankruptcy trustee for Chicago Custom Home Builders in the case *In re Chicago Custom Home Builders, Inc.* BK No. 24-02286 (N.D.Ill.). (Dkt. 21 at 5¶30; Dkt. 1-

9). The letter did not provide information on the name of any third party claimant. (Dkt. 21 at 5¶31; Dkt. 1-9). There is no language in the letter identifying the AAA Arbitration suit or the Chancery complaint. (Dkt. 21 at 5¶32).

On March 5, 2025, the Honorable Deborah L. Thorne entered an order granting Westfield's motion for relief from stay to file a declaratory judgment lawsuit. See Dkt. 47 of BK No. 24-02286 (N.D.Ill. March 5, 2025). On March 7, 2025, Westfield filed the complaint for declaratory judgment. (Dkt. 1). On March 25, 2025, Westfield, through its retained attorney, performed an internet search to discover the legal names of the owners of 3758 N. Wayne, and then a Cook County docket search. (Dkt. 21 at 5¶33). On March 25, 2025, upon performing the docket search, through retained counsel, Westfield discovered for the first time that the Zitellas filed the Chancery complaint. (Dkt. 21 at 5¶34). On March 25, 2025, upon performing the docket search, through retained counsel, Westfield discovered for the first time that the Zitellas filed an AAA Arbitration suit against Chicago Custom Home Builders. (Dkt. 21 at 5¶35). On March 25, 2025, Westfield, through its retained attorney, upon performing an internet search and a Cook County docket search, first obtained a copy of the Chancery Complaint. (Dkt. 21 at 5¶36).

On September 5, 2025, Pekin Insurance Company, by and through its attorney Richard Burgland, produced to Westfield a copy of the AAA arbitration demand without the referenced exhibits. (Dkt. 21 at 5¶37; Dkt. 21-1). It was on September 5, 2025, that Westfield first received a copy of the AAA arbitration demand. (Dkt. 21 at 6¶38). The AAA arbitration demand alleges in part that Chicago Custom Home Builders negligently caused water penetration damage to personal property and building components that were not subject of the Contract work. (Dkt. 21-1 at 11-12¶¶57-59). The AAA Arbitration demand alleges in part that the Zitellas have incurred and are continuing to occur damages. (Dkt. 21-1 at 8¶45). No person or organization has ever

3

provided a copy of the AAA arbitration demand, with the referenced exhibits, to Westfield. (Dkt. 21 at 6¶39). On September 5, 2025, Pekin Insurance Company, by and through its attorney Richard Burgland, produced to Westfield portions of claim file no. 0H61599 that Pekin Insurance Company created on August 20, 2020. (Dkt. 21 at 6¶40). It turns out that on August 20, 2020, Chicago Custom Home Builders, by and through its officer David Freeley and its insurance agent Scott J. Anderson, of Rand-Tec Insurance Agency Inc., served a tender of defense against the *Zitella* suit upon Pekin Insurance Company, under a commercial general liability policy that Pekin Insurance Company issued to Chicago Custom Home Builders as a named insured, policy no. CL0101645-K. (Dkt. 21 at 6¶41; (Dkt. 21-2). It turns out that on August 21, 2020, Pekin Insurance Company claims specialist Jeana Horner served an e-mail upon Chicago Custom Home Builders' officer, David Freeley, that reads in part:

> This demand for arbitration <u>needs to be forwarded to any insurance carrier</u> who had your liability insurance coverage from 7/2016 until the present. It is very important that this be done as soon as possible! This demand is very time sensitive and failure to comply could result in unfavorable decisions.

(Dkt. 21 at 6¶42; Dkt. 21-3). It turns out that on August 21, 2020, David Freeley, of Chicago Custom Home Builders, served on Pekin Insurance Company, a copy of the construction contract between the Zitellas and Chicago Custom Home Builders. (Dkt. 21 at 7¶43; Dkt. 21-3). It turns out that on August 26, 2020, Pekin Insurance Company claims specialist Jeana Horner served on Chicago Custom Home Builders' officer, David Freeley, an e-mail requesting the contact information for any contractor that work on the Zitella home construction project along with certificates of insurance. (Dkt. 21 at 7¶44; Dkt. 21-3). It turns out that on October 2, 2020, Pekin Insurance Company served upon Chicago Custom Home Builders a reservation of rights letter stating in part that Pekin Insurance Company was, for the time-being, undertaking to pay the reasonable defense costs incurred by independent counsel. (Dkt. 21 at 7¶45; Dkt. 21-4). It turns

4

out that Chicago Custom Home Builders, by and through its agents, servants, employees, and attorneys, was sophisticated enough to promptly provide notice of another alleged construction defects claim, suit, demand, or notice to Pekin Insurance Company in the past, including case no. ARB 01-17-004-2092, that Foti & Stacy Chronopoulos, of 1737-39 N. Wolcott Ave., Chicago, by and through their attorneys Freeborn & Peters, 311 W. Wacker Drive, Suite 3000, Chicago, Illinois 60606 filed against Chicago Custom Home Builders during 2017. (Dkt. 21 at 7¶46). Prior to September 5, 2025, no person or organization ever provided Westfield with a copy of any pleading, demand, or notice in the *Zitella* Arbitration suit. (Dkt. 21 at 8¶47).

On September 17, 2025, Westfield filed an amended complaint. (Dkt. 21). On October 17, 2025, the Honorable Jeremy C. Daniel entered a default against Defendants. (Dkt. 25).

## HISTORY OF PURCHASING LIABILTIY POLICIES

On and before March 1, 2023, Chicago Custom Home Builders had been a licensed contractor in the City of Chicago for ten (10) plus years, with experience purchasing commercial general liability policies and umbrella liability policies. (Dkt. 21 at 8¶48). Westfield issued a commercial package policy to Chicago Custom Home Builders, policy CWP 133032C, effective March 1, 2022 to March 1, 2023; and renewed for the policy period March 1, 2023 to March 1, 2024. (Dkt. 21 at 8¶51; Dkt. 21-5; Dkt. 21-6).

## ARGUMENT

"A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in [a] complaint." e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). "It is well-settled that the court has authority to enter declaratory default judgments as well as default judgments . . ." Tygris Asset Fin., Inc. v. Szollas, 09-c-4488, 2010 WL 2266432, *6 (N.D. Ill. June 7, 2010)). When the plaintiff does not seek damages-only a declaration of rights, a motion for default judgment can be resolved without the need to hold a

5

hearing. Elite Exteriors, 20-cv-01905, 2021 WL 1706238, *1, n. 1.

"Rule 12(a) of the Federal Rules of Civil Procedure generally requires a defendant to file an answer within 21 days after the service of the summons and complaint." Id. "The failure to do so may result in the defendant's default under Rule 55(a)." Id. "When a party 'against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Id. (*Citing* Fed. R. Civ. P. 55(a)). "An entry of default must precede a default judgment." Id. (*Citing* Fed. R. Civ. P. 55(b)).

"Upon the entry of default, the 'well-pled allegations of the complaint relating to liability are taken as true....'" Id. "An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.'" Id. (*Quoting* Fed. R. Civ. P. 8(b)(6)); *see also* e360 Insight, 500 F.3d at 602.). "But even after default has been entered, 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" Id. (*Quoting* PNC Bank, Nat'l Assoc. v. Michael A. Nordwall, Ltd., 13-cv-01469-SLD-JAG, 2014 WL 12698572, at *1 (C.D. Ill. Nov. 19, 2014))(quotation marks omitted).

Illinois courts apply a "traditional" notice rule that the Illinois Supreme Court stated seventy (70) years ago. Country Mutual Ins. Co. v. Livorsi Marine, Inc., 222 Ill.2d 303, 316, 856 N.E.2d 338, 345, 305 Ill.Dec. 533, 541 (2006)(Simmon v. Iowa Mut. Cas. Co., 3 Ill.2d 318, 321 (1954)); American Mut. Liability Ins. Co. v. Beatrice Companies, Inc., 924 F.Supp. 861, 875 (N.D.Ill. 1996). The Supreme Court in Simmon did not distinguish between notice of an occurrence and notice of a lawsuit, and the Supreme Court in Livorsi, 856 N.E.2d at 346, expressly declined to do so. "Notice provisions in an insurance policy are not merely technical requirements but are conditions precedent to an insurer's contractual duties." Farmers Auto Ins. v. Ass'n v.

Burton, 2012 IL App (4th) 110289, ¶16, 967 N.E.2d 329, 333-334, 359 Ill.Dec. 599, 603-604 (*Citing* Livorsi, 222 Ill.2d at 311). Notice provisions "impose valid prerequisites to insurance coverage." Id. (*Citing* Livorsi, 222 Ill.2d at 311). Failure to provide timely notice "renders a claim under the policy invalid." River v. Commercial Life Ins. Co., 160 F.3d 1164, 1171 (7th Cir. 1998).

"[T]he most obvious factor to be considered in determining whether notice was [objectively] reasonable is time itself." Burton, 2012 IL App (4th) 110289, ¶16 (*Citing* Livorsi, 222 Ill.2d at 311). "[N]o matter the circumstances, '[t]he insured is expected to act with due diligence when its policy requires it to give notice of a suit to the insurer.'" Sentinel Insurance Co, Ltd. v. Cogan, 202 F.Supp.3d 831, 840 (N.D.Ill. 2016)(*Quoting* Northern Ins. Co. of New York v. City of Chicago, 325 Ill.App.3d 1086, 1091, 759 N.E.2d 144, 149, 259 Ill.Dec. 664, 669 (Ill. App. Ct. 1st Dist. 2001)). The relevant policy language in this case provides that an insured is required to "[i]mmediately send [Westfield] copies of any demands, notices, summonses or legal papers received in connection with [a] claim or 'suit.'" (Dkt. 21 at 21-22¶63; 28¶73; Dkt. 21-5 at 95, 163-164; Dkt. 21-6 at 94, 162-163). The plain and ordinary meaning of the word "immediate" is unambiguous. Hauser v. Great American Assurance Co., 971 F.Supp.3d 824, 831 (N.D.Ill. 2013); Illinois Insurance Guarantee Fund v. Lockhart, 152 Ill.App.3d 603, 606, 504 N.E.2d 857, 859, 105 Ill.Dec. 572, 574 (Ill. App. Ct. 1st Dist. 1987). "[I]mmediate" is "at once" or "without delay." Id. The notice provision "[i]f *Claim is made or suit is brought* against the Insured, the Insured shall *immediately* forward to the Company every demand, notice, summons or other process received by him or his representatives" is one of *prompt* notice. Id. (*Citing* Highlands Ins. Co. v. Lewis Rail Serv. Co., 10 F.3d 1247, 1250 (7th Cir. 1993)(The Seventh Circuit adding emphasis on claim is made or suit is brought along with immediately; and the District Court adding emphasis to the word prompt.)). The other relevant policy language in this case states that the Insured "must see to

7

it that [Westfield] [is] notified as soon as practicable of" an "'occurrence' . . . which may result in a claim." (Dkt. 21 at 21-22¶63; 28¶73; Dkt. 21-5 at 95, 163-164; Dkt. 21-6 at 94, 162-163).

In addition to the "time itself" factor, "[t]he following factors *may be considered* in determining whether notice to an insurer has been given within a reasonable time: (1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer." Burton, 2012 IL App (4th) 110289, ¶16 (*Quoting* West American Co. v. Yorkville National Bank, 238 Ill.2d 177, 185-186, 345 Ill.Dec. 445, 450-451, 939 N.E.2d 288, 293-294 (2010))(The Fourth District adding emphasis). However, "an insurance company does not have to establish it was prejudiced for notice to be unreasonable." Id. (*Citing* Livorsi Marine, Inc., 222 Ill.2d at 311). See also Hauser v. Great American Assurance Co., 971 F.Supp.3d 824, 831 (N.D.Ill. 2013)(*Citing* Highlands Ins. Co. v. Lewis Rail Serv. Co., 10 F.3d 1247, 1250 (7th Cir. 1993), and Fletcher v. Palos Comm. Sch. Dist. No. 118 of Cook County, 164 Ill.App.3d 921, 928, 518 N.E.2d 363, 368, 115 Ill.Dec. 838, 843 (1st Dist. 1987)); and Amerisure Ins. Co. v. Laserage Tech Corp., 2 F.Supp.2d 296, 305 (W.D.N.Y. 1998)(*Applying* Illinois law and holding the insured's delay in providing notice for even a few months prejudices the insurer.). Once it is determined that the insured did not give notice of a lawsuit to an insurer within an objectively reasonable time, the final *Livorsi Marine* factor is moot. Westfield Insurance Co. v. MA Rebar Services, Inc., 2023 IL App (1st) 230161-U, ¶17. "[O]nce it is determined that the insurer did not receive reasonable notice of an occurrence or a lawsuit, the policyholder may not recover under the policy, regardless of whether the lack of reasonable notice prejudiced the insurer." Id. (*Citing* Livorsi Marine, 222 Ill.2d at 317). Once it is determined that the insured did not give notice of a

8

lawsuit to an insurer within an objectively reasonable time, "[t]he question of prejudice is irrelevant . . ." Cogan, 202 F.Supp.3d at 841. "Indeed, 'even if there is no prejudice to the insurer, a policyholder still must give reasonable notice according to the terms of the insurance policy.'" MA Rebar Services, Inc., 2023 IL App (1st) 230161-U, ¶17. (*Quoting* Livorsi Marine, 856 N.E.2d at 346). In other words, "lack of prejudice is not a condition which will dispense with the requirement of reasonable notice." Cogan, 202 F.Supp.3d at 841 (*Quoting* Hartford Cas. Ins. Co. v. Context Media, Inc., 65 F.Supp.3d 570, 583-84 (N.D.Ill. 2014)(*Quoting* Livorsi, 856 N.E.2d at 346)(*Citing* Simmon, 121 N.E.2d 509).

Courts have long held that liability policies do "indeed impose an *objective standard of reasonableness* on the insured." Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co., 880 F.2d 685, 693 (3rd Cir. 1989)(*Applying* Illinois law.). The key element of the requirement to notify is the appearance to a *reasonably prudent person* that a claim covered by the policy may be brought against the insured. Id.; National Bank v. Winstead Excavating, 94 Ill.App.3d 839, 842, 419 N.E.2d 522, 524, 50 Ill.Dec. 414, 416 (Ill. Ct. App. 4th Dist. 1981); Tribune Co. v. Allstate Ins. Co., 306 Ill.App.3d 779, 788, 715 N.E.2d 263, 270, 239 Ill.Dec. 818, 825 (1st Dist. 1999); Moje v. Federal Hockey League, LLC, 377 F.Supp. 907, 921 (N.D.Ill. 2019). "[A]n insured's subjective beliefs must give way to an objective standard of reasonableness based on all the circumstances." Jkis Investments, 2025 WL 965721 at *8 (*Quoting* Brumit Servs., 877 F.3d at 361, quoting Kerr v. Ill. Cent. R.R. Co., 670 N.E.2d 759, 768, 283 Ill.App.3d 574, 586, 219 Ill.Dec. 81, 90 (Ill. App. Ct. 1st Dist. 1996)); Cogan, 202 F.Supp.3d at 840-41 (*Reasoning* that the insured did not act diligently as a reasonably prudent person would in determining if the occurrence or lawsuit was covered by the policy, where the insured promptly tendered to three other insurers, but waited eight (8) months to engage someone else to determine whether liability policies cover defamation lawsuits.).

9

Courts continue to apply an objective standard in considering an insured's sophistication, focusing on the insured's sophistication in commercial matters generally as opposed to the insured's sophistication in insurance matters specifically. State Auto Prop. & Cas. Ins. Co. v. Brumit Servs., Inc., 877 F.3d 355, 359 (7th Cir. 2017); Jkis Investments v. Amguard Ins. Co., 22-cv-04126, 2025 WL 965721, *6 (C.D.Ill. March 31, 2025); Breckenridge Apartment Homes, LLC v. Greater N.Y. Mut. Ins. Co., 16c-v-50115, 2019 WL 10248740, *10 (N.D.Ill. Feb. 19, 2019)). "'Courts assess sophistication as part of a totality-of-the-circumstances analysis and consider an insured's sophistication in commercial matters generally, not just their sophistication in insurance matters specifically.'" Jkis Investments, 2025 WL 9656721, *6 (*Quoting* Breckenridge Apartment Homes, 2019 WL 10248740 at *10). Focusing heavily on sophistication in insurance matters specifically "would render most people in Illinois unsophisticated as a matter of law." Brumit Servs., 877 F.3d at 359. That would not only be "untenable as a matter of law," but would also be "contrary to the Illinois Supreme Court's repeated holdings that notice provisions in insurance policies are reasonable." Id. "The Seventh Circuit [in Brumit Servs.] found that a high school graduate with some college education was sufficiently sophisticated because he operated his own business for four years, oversaw two employees, and surely had to renew the multiple insurance policies that he had purchased over those years." Jkis Investments, 2025 WL 965721, *6. A claim of lack of sophistication is also not objectively reasonably tenable where the insured contracted with a number of insurance companies in the past, previously tendered defense to other insurers, or previously received benefits under a policy. River, 160 F.3d at 1171; Essex Insurance Co. v. Village of Oak Lawn, 189 F.Supp.3d 779, 791 (N.D.Ill. 2016)(*Quoting* Ingalls Mem'l Hosp. v. Executive Risk Indem., Inc., 2011 WL 10069004, (Ill. Ct. App. 1st Dist. 2011), for the proposition that primary and excess insurance

10

policies "inherently serve different functions, cover different risks and attach at different stages."); Brit UW, Ltd. v. Tripar, Inc., 15-c-5866, 2017 WL 66821, at *6 (N.D.Ill. Jan. 6, 2017)(*Objectively reasoning* that "[a]s a corporation doing business in the construction industry that was represented by counsel in the Underlying Action," the insured was sophisticated in commerce and insurance.).

"Conversely, those who are found to be unsophisticated are individuals like teen drivers who had never purchased their own insurance policies, *Grasso v. Mid-Century Ins. Co.*, 536 N.E.2d 977, 979–80 (Ill. App. Ct. 1989), or uneducated and inexperienced business owners who allowed default to be entered against them before even contacting the insurer, *Berglind [v. Paintball Bus. Ass'n]*, 930 N.E.2d [1036,] 1045–46 [Ill.App.Ct. 2010]; *see also id.* at 1045 (noting that the individual 'testified that when he receive[d] letters or other documents in the mail that he d[id] not understand, he thr[e]w[ ] them away')." Jkis Investments, 2025 WL 965721 at *6.

Because corporations are nothing but bundles of agency relations, the only knowledge that a corporation has is knowledge imputed to the corporation from its agents, servants, employees, and attorneys. Peterson v. Sealed Air Corp., 902 F.2d 1232, 1237 (7th Cir. 1990); Employers Ins. of Wausau v. Banco De Seguros Del Estado, 199 F.3d 937, 944 (7th Cir. 1999); Campen v. Executive House Hotel, Inc., 105 Ill.App.3d 576, 586, 343 N.E.2d 511, 517, 61 Ill.Dec. 358, 364 (1st Dist. 1982)(*Citing* 3 Fletcher, Cyclopedia Corporations (1975 Rev.), § 787, at 9). An attorney's knowledge is imputed to her client regardless of whether the attorney has actually communicated such knowledge to the client. Landmark American Insurance Company v. Deerfield Construction, Inc., 933 F.3d 806, 812 (7th Cir. 2019).

In MHM Services, Inc. v. Assurance Co. of America, the First District objectively reasoned that "MHM was savvy enough to have both primary and excess/umbrella coverage, it retained a part-time and later a full-time general counsel (Calligaro and then Johnson), it had the

11

benefit of local litigation counsel (Singer), in 2008 it retained coverage counsel, and it had cash on hand to pay its litigation expenses and its share of settlement to A.B." 2012 IL App (1st) 112171, ¶64, 975 N.E.2d 1139, 1159, 363 Ill.Dec. 830, 850. The First District determined, as a matter of law, that a "reasonable person" in MHM's position would have given notice upon being served in 2006. Id. The First District reasoned that the delay happened because "this insured did not bother to read the complaint and its insurance contract together." Id. at ¶73. Given that MHM did not give notice of a lawsuit to the insurer within an objectively reasonable time, the question of prejudice was irrelevant. Id. Nevertheless, the First District noted that the burden of establishing lack of prejudice was on MHM and found that the delay in providing notice prejudiced the insurer since it deprived the insurer of the opportunity to meaningfully participate in the litigation. Id. at ¶¶48, 55, 76.

In AMCO Insurance Co. v. Erie Insurance Exchange, during March of 2007, the underlying plaintiff Kevin Smith, filed a lawsuit against the general contractor Hartz and multiple subcontractors, sounding in common law construction negligence, seeking to recover for bodily injury sustained as a result of encountering anchor bolts and falling at a construction project. 2016 IL App (1st) 142660, ¶23, 49 N.E.3d 900, 908, 401 Ill.Dec. 198, 206. The construction project consisted of building residential homes in a subdivision. Id. at ¶4. Cincinnati Insurance issued a general liability policy to Hartz. Id. at ¶5. West Bend Mutual Insurance Company issued a general liability policy to a masonry subcontractor by the name of G & M. Id. at ¶25, n. 3. Country Mutual Insurance issued a general liability policy to a carpentry subcontractor by the name of KT. Id. AMCO Insurance issued a general liability policy and an umbrella liability policy to a carpentry subcontractor by the name of Cimarron. Id. at ¶5. Erie Insurance issued a general liability policy to a concrete subcontractor by the name of VDL. Id. Hartz bargained for additional insured coverage

as a benefit of each of its subcontracts. Id. at ¶5, ¶25, n. 3. Within one (1) month of the underlying plaintiff filing his lawsuit, Hartz tendered Hartz's defense to West Bend and Country Mutual. Id. at ¶25. Within one (1) month of the underlying plaintiff filing an amended pleading adding Cimmaron as a defendant, Hartz tendered its defense to AMCO. Id. Erie first received notice of the underlying lawsuit during July of 2008. Id. at ¶24.

The First District explained that "[i]n order to trigger the Erie policy at bar, Hartz, as a putative additional insured, had to timely notify Erie of the underlying action." Id. at ¶21. The First District objectively reasoned that Hartz, a corporation with an attorney and who previously timely tendered defense of the underlying lawsuit to other insurers, possessed a high degree of sophistication in matters of commerce and insurance. Id. at ¶25. The First District objectively reasoned that "although VDL was not named as a defendant in Smith's original March 2007 complaint, Hartz reasonably *could have* compared the allegations in the original complaint to the certificate of insurance for VDL, and ascertained that policy coverage under the Erie policy was available." Id. at ¶27 (Emphasis added to draw attention to objective rather than subjective standard). The First District objectively reasoned that "[c]ontrary to AMCO's arguments, VDL's presence at the construction site at the time of the accident did not matter[, where] Hartz knew that VDL installed the anchor bolts referenced in Smith's complaint and knew that it had a certificate of insurance for coverage through VDL under the Erie policy." Id. The First District objectively reasoned that "whether Hartz knew which of its subcontractors was responsible for bringing Edward Allen onto the jobsite had no bearing on the fact that the allegations regarding anchor bolts in the underlying complaint should have alerted Hartz to the issue of VDL's work, and had no relevance as to whether Hartz knew it had coverage through VDL under the Erie policy and to its duty to timely notify Erie of the underlying action." Id. Under the

13

circumstances, the First District found that Hartz's "confusion" excuse for delay in notifying Erie was not objectively reasonable. Id. at ¶28. Accordingly, the First District objectively concluded that "the notice provision in the Erie policy was violated as a result of Hartz's failure to *immediately* send Erie copies of any demands, notices, summonses or legal papers it received in connection with the underlying action." Id. at ¶24 (The First District adding emphasis.).

In this case, Chicago Custom Home Builders is a complex organization, created under the laws of Illinois, whose delay in excess of seven (7) years in providing notice to Westfield of an occurrence, an offense, or a loss, that may resulting a claim; or whose delay in excess of four and a half (4 and 1/2) years in providing notice to Westfield of the AAA Demand for Arbitration was, as a matter of law, not objectively reasonable. The "time itself" factor weighs heavily against finding that Chicago Custom Home Builders provided "immediate" or "prompt" notice. The "policy language" factor also weighs against a finding that Chicago Custom Home Builders provided "immediate" or "prompt" notice, where the provisions have mandatory phraseology. The "sophistication" factor weighs against a finding that Chicago Custom Home Builders provided "immediate" or "prompt" notice. The knowledge and sophistication of Chicago Custom Home Builders's agents, servants, employees, and attorneys is imputed to Chicago Custom Home Builders. Chicago Custom Home Builders was sophisticated enough to have a prior history of purchasing both general liability coverage and umbrella liability coverage. Chicago Custom Home Builders, by and through its agents, servants, employees, and attorneys, was sophisticated enough to provide notice of the Zitella claims or suit to Pekin Insurance during 2020. In addition, Chicago Custom Home Builders, by and through its agents, servants, employees, and attorneys, was sophisticated enough to promptly provide notice of another alleged construction defects claim, suit, demand, or notice to Pekin Insurance Company that Foti & Stacy Chronopoulos filed

14

against Chicago Custom Home Builders during 2017. (Dkt. 21 at 7¶46). The "awareness" factor does not favor Chicago Custom Home Builders, where the burden of establishing lack of awareness is on Chicago Custom Home Builders and there is no evidence in the record that Chicago Custom Home Builders lacked awareness of an occurrence. The "diligence" factor weighs against a finding that Chicago Custom Home Builders provided "immediate" or "prompt" notice, where the burden of establishing diligence in ascertaining coverage availability is on Chicago Custom Home Builders; the underlying complaint alleges continuing damages; and a "reasonable person" in Chicago Custom Home Building's position would have given "immediate" or "prompt" notice to Westfield. (Dkt. 21-1 at 2¶4, 4¶¶24-26, 5¶31, 8¶45, 12¶¶58-59). Given that Chicago Custom Home Builders did not give notice to Westfield within an objectively reasonable time, the "prejudice" factor is moot or irrelevant. Nevertheless, the burden of establishing lack of prejudice is on Chicago Custom Home Builders and the delay in providing notice prejudiced Westfield since it deprived Westfield of the opportunity to meaningfully participate in the underlying litigation.

Westfield does not intend to waive any defenses to coverage that it has previously pled. Westfield reserves the right to assert all other defenses to coverage that it has previously pled.

WHEREFORE, Plaintiff, Westfield Superior Insurance Company, prays that this Honorable Court enter an order granting a default judgment against Defendants, declaring that Westfield owes no duty to defend or indemnify Chicago Custom Home Builders, Inc. against the Zitellas's underlying claims or suit.

ESP KREUZER CORES LLP
400 S. County Farm Road, Suite 200
Wheaton, Illinois 60187
(630) 871-1002; ARDC #6274517
jbarger@ekclawfirm.com

RESPECTFULLY SUBMITTED,

_Jeffrey S. Barger_
Jeffrey S. Barger